

JLG:KCM
F. #2024R00854

U.S. Department of Justice

United States Attorney
Eastern District of New York

*610 Federal Plaza*
*Central Islip, New York 11722*

February 13, 2026

By ECF

The Honorable Joanna Seybert
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

   Re: United States v. Renee Hoberman
      Criminal Docket No. 24-463 (JS)

Dear Judge Seybert,

  The government respectfully submits this letter in connection with the sentencing of defendant Renee Hoberman, also known as "Rina" (hereinafter, "Hoberman" or "the defendant") in the above-captioned matter, which is presently scheduled for February 20, 2026 before this Court, and in response to the defendant's sentencing memorandum, dated December 11, 2025 ("Def. Mem.") (see ECF Dkt. No. 26), which seeks the mandatory minimum term of imprisonment of 5 years.

  The government respectfully submits that the defendant has a United States Sentencing Guidelines ("Guidelines") range of 121 to 151 months' imprisonment, in connection with her plea to receipt and distribution of child pornography.[1] The defendant agrees with this calculation. See Def. Mem. p. 3. For the reasons stated below, the government respectfully requests that the Court impose a sentence at the top of the applicable Guidelines range, which would be sufficient but not greater than necessary to, *inter alia*, reflect the seriousness of the offense, promote respect for the law, and provide just punishment for this mental health counselor for children and adolescents who elusively traded in child pornography.

---

  [1] The Government's calculation of the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range differs from the United States Probation Department ("Probation") calculation as set forth in the Presentence Investigation Report ("PSR"), dated September 10, 2025, as described further below.

I. Background

    A.    <u>Hoberman's Offense Conduct</u>

In or about and between June 2024 and October 2024, the National Center for Missing and Exploited Children ("NCMEC") received several complaints via its CyberTipline from Kik Messenger ("Kik")[2] regarding users who uploaded child sexual abuse material ("CSAM" or "child pornography"). PSR ¶ 4. After receiving this information, NCMEC notified the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), who began the investigation that ultimately led to Hoberman's identification and arrest. <u>Id</u>.

The investigation revealed that on or about June 7, 2024, a Kik user bearing the display name "Spankedgurl323," the screen name "naughtygirl323567788," and the registered email address "rhobermanlmsw▮▮▮▮▮,"[3] uploaded approximately six images and/or videos depicting the violent sexual abuse of children, including one 17-second long video that depicted a naked infant, approximately six months in age, being forcibly restrained by an adult male who penetrated the infant from behind with his penis. During the video the infant can be heard screaming frantically and crying hysterically. PSR ¶ 5.

The investigation further revealed that on or about September 2, 2024, a Kik user account with the display name "badgurl854," and the registered email address "reneeh323▮▮▮▮▮"[4] uploaded 14 images and/or videos depicting the violent sexual abuse of children, including one 48-second long video that depicted a naked female infant, sitting on the lap of a fully naked adult male, who penetrated the infant with his penis from behind. PSR ¶ 6. The infant is seen and heard screaming frantically and crying hysterically. <u>Id</u>. Another disturbing video uploaded by the Kik user on September 2, 2024 depicts the violent sexual abuse of a female toddler, approximately one to two years old, who is seen laying on her back with her knees bent and underwear pulled to the side, exposing her vagina. <u>Id</u>. In the video, which is 52-seconds long, a male penis penetrates the toddler's vagina, before the child is forcibly turned over into a prone position and the male continues raping the child from behind. <u>Id</u>. The toddler is heard screaming and crying hysterically for the duration of this video. <u>Id</u>.

Additionally, the investigation revealed that on or about October 16, 2024, the Kik user account with the display name "AlwayzSpnkednkd," and the registered email address "rhobermanlcsw▮▮▮▮▮" engaged in multiple chats with other Kik users concerning the

---

    [2]    Kik Messenger is a free mobile messaging application that permits users to chat one-on-one, or in groups. Kik is known for its features preserving users' anonymity, such as allowing users to register with only a username and email address, without the need to provide a telephone number.

    [3]    During the time period relevant to this investigation, the defendant held professional licenses, including, <i>inter alia</i>, Licensed Master Social Worker ("LMSW") and Licensed Clinical Social Worker ("LCSW"). PSR ¶ 76.

    [4]    The defendant goes by the nickname "Rina," as charged in the Indictment.

2

sexual molestation of children. PSR ¶ 7. Specifically, the Kik user, who purported to be a man, claimed to have multiple minor children that "he" had anal sex with. Id. The user continued to claim he punished his children by stripping them naked and spanking them in front of his other children. Id. Along with this chat, the Kik user sent two videos depicting CSAM, claiming that the children in the videos were "his" own. Id.

On or about October 23, 2024, HSI agents and Task Force officers executed a federal search and seizure warrant at the defendant's residence in Plainview, New York. PSR ¶ 9. HSI seized numerous electronic devices, including, *inter alia*, an Apple iPhone, Apple iPad, and Lenovo ThinkPad laptop, which were recovered from the defendant's basement bedroom. Id.

The defendant waived her Miranda rights, and agreed to be interviewed. She told law enforcement agents, in substance and in relevant part, that she used Kik and another similar chats, such as Telegram, where she joined group chats that focused on the sexual abuse of children; that she received images and videos containing CSAM from the chat groups and messaging applications; that she frequented chats on Kik and other third party messaging applications where she met other users interested in the sexual abuse of children; that she often pretended to be the father of a child who was sexually exploited; and that she watched videos and images of infants and toddlers being sexually abused. Id. Furthermore, the defendant admitted, in substance and relevant part, that she sent videos depicting sexual exploitation of infants to men while chatting with them, and that she received sexual gratification from watching videos depicting the sexual exploitation of infants and toddlers, including listening to the sexual abuse of infants and toddlers in videos, because it was "part of the experience." Id. She further acknowledged that she was employed as a mental health therapist for children throughout the time period of the instant offense. Id.

A subsequent analysis of the defendant's electronic devices revealed that she possessed well over 100 images and videos containing CSAM.[5]

B. Procedural History

On October 23, 2024, the defendant was arrested and charged by complaint with one count of distribution of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2). ECF Dkt. No. 1. The defendant was arraigned before the Honorable Arlene R. Lindsay, United States Magistrate Judge, who entered a permanent order of detention. ECF Dkt. No. 2.

---

[5] The defendant admitted, in substance and relevant part, that she deleted CSAM videos and images from her phone prior to the execution of the search warrant. PSR ¶ 11. This is consistent with a review of the electronic data recovered from the defendant's devices, where the defendant engaged in numerous chats including those in which the defendant purported to be a father who sexually abused "his" child, and further discussed trading and sharing CSAM with other chat-group members. Id.

On November 14, 2022, a grand jury sitting in the Eastern District of New York returned an Indictment charging the defendant with three counts of receipt and distribution of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1), and one count of possessing child pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B) (the "Indictment").  ECF Dkt. No. 8.

On June 18, 2025, the defendant pleaded guilty before this Court, pursuant to the terms of a plea agreement (the "Plea Agreement"), to Count One of the Indictment.  PSR ¶ 1.

II.     The Plea Agreement and the PSR

The Plea Agreement calculates the defendant's adjusted total offense level to be 32; and her Criminal History Category to be I, resulting in an estimated Guidelines range of imprisonment of 121 to 151 months.  The defendant stipulated to this Guidelines calculation.  As set forth below, the government respectfully rests on the calculation contained in the plea agreement for the purposes of sentencing.

The PSR, in contrast, calculates the defendant's adjusted total offense level to be 37, see PSR ¶¶ 17-31, and her criminal history score to be 0, see PSR ¶¶ 32-34, resulting in a Criminal History of I, and an estimated Guidelines range of imprisonment of 210 to 240 months (in light of the statutory maximum sentence).  PSR ¶ 92.  Nevertheless, Probation has recommended a sentence of 96 months imprisonment and only 5 years' supervised release (see PSR Sent. Rec., pp. 1, 3).  Notably, this recommended sentence is substantially lower than the Guidelines range as calculated by Probation, and even lower than the Guidelines range calculated by the parties.

The Guidelines range contained in the plea agreement differs from Probation's Guidelines calculation in two ways:

*First,* Probation's Guidelines calculation includes a 5-point enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B), for the distribution of CSAM "in exchange for any valuable consideration," because certain of the defendant's chats appear to show that she distributed CSAM to others with the expectation that she would receive CSAM in return.  PSR ¶ 20.  The defendant objects to the application of this enhancement.  See Def. Mem. p. 1.  Probation supports the application of this enhancement by referencing a conversation the defendant participated in whereby the defendant and another user discussed sending one another CSAM (see PSR Second Addendum, p. 2).  The government respectfully submits that the evidence is insufficient here to demonstrate that the defendant agreed to a specific exchange.  The other party's statement, in substance and relevant part, "you got more vids; I'll send some more too," (id.) is not evidence of an agreement, but rather demonstrates a unilateral expectation by the defendant that she would receive videos.  Though incredibly disturbing, the government respectfully submits that this is not sufficient to satisfy the requirement that both parties needed to enter into an agreement for the 5-point enhancement to apply.  See United States v. Darrah, 132 F. 4th 643, 651. (2d. Cir. 2025).

*Second,* Probation's Guidelines calculation includes a 5-point enhancement pursuant to U.S.S.G § 2G2.2(b)(7)(D), for the possession of 600 or more images of CSAM.  PSR

4

¶ 23. However, this number is admittedly rooted in an estimation and extrapolation based on the defendant's chat activity, and not on possession or review of actual CSAM. PSR ¶ 11. Therefore, the government respectfully submits that this higher number of images and videos is too hypothetical to be proven by a preponderance of the evidence, and therefore, that the Court should instead use the number set forth in the plea agreement.

Therefore, the government respectfully submits that the defendant has a Guidelines range of 121 to 151 months' imprisonment, and, for the reason set forth below, seeks a sentence at the top of that range.

III.   Discussion

   A.   Applicable Law

The Sentencing Guidelines still provide strong guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103(2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range;" that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). See also, Kimbrough v. United States, 552 U.S. 85, 101, 108 (2007).

After that calculation, a sentencing court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7). See Gall, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1998). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

### B. A High-End Guidelines Range Sentence is Appropriate

In light of the sentencing factors set forth above, the Government respectfully submits that the sentences recommended by both the defendant and Probation are woefully inadequate, and the Court should sentence the defendant to a term of imprisonment at the high-end of the applicable Guidelines range, as set forth in the plea agreement.

The nature and circumstances of this offense unquestionably warrant a significant sentence. The violent and sadistic nature of the CSAM videos and images the defendant repeatedly uploaded and traded to satisfy her perverse sexual fantasies is made all the more dangerous and disturbing in light of the fact that she worked with infants, young children and teenagers as a mental health counselor and licensed social worker.

As this Court is well aware, child pornography crimes represent the continuing victimization of the children depicted in these images and videos – which include here the sexual torture of infants, some too little to walk or talk. Possession of videos and images of abuse, alone, fosters a market for more abuse. See, e.g., United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). "Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." United States v. Williams, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," New York v. Ferber, 458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, Osborne v. Ohio, 495 U.S. 103, 110 (1990). The government respectfully submits that, in light of the above, the Court's sentence must reflect the need for both general and specific deterrence to this insidious and perpetuating crime.

This defendant was found to be in possession of exceptionally violent and sadistic child pornography images and videos, which included numerous lengthy videos depicting the violent sexual abuse of very young children. Indeed, these videos depict the rape of female infants and toddlers. Moreover, the defendant, a licensed social worker and former daycare employee, by the nature of her profession, was entrusted by parents and schools to care for and protect the youngest and most vulnerable members of society. Instead, she actively sought out videos depicting the violent rape of infants and toddlers for her own perverse pleasure. She participated in chats where she pretended to be a parent, usually a father, who abused "his" children. In one particularly disturbing chat, the defendant even provided a (clothed) photograph of an identified child – a family friend – whom the defendant claimed was her own, and discussed the details of the abuse of that child. Further, although she admittedly cyclically deleted CSAM after viewing it, and expressed feelings of guilt, were it not for law enforcement intervention and her arrest in this case, there is no evidence that she would ever have stopped this dangerous and sordid behavior.

6

The defendant's history and characteristics, as set forth in the PSR and in the Def. Mem., do not adequately explain, and certainly do not justify, her heinous criminal activity. The fact remains that she, unlike many criminal defendants, has benefitted – and continues to benefit – from a loving and supportive adoptive family. Her struggles with mental health issues and addiction, among other traumatic events in her life, while very unfortunate, must still be considered against the fact of the defendant's admitted interest particularly in videos depicting heinous abuse of children, PSR ¶ 9, and the fact that she perversely worked at a day care facility and served as a mental health therapist for children throughout the time period of the instant offense. Id. ¶ 10.

IV. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 151 months' imprisonment, along with a substantial period of supervised release, would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Kaitlin C. McTague
Assistant U.S. Attorney
(631) 715-7878

cc: Evan Sugar, Esq. (by Email and ECF)
U.S. Probation Officer Gregory Giblin (by E-mail)